SHAW v. POWELL.

4-6867                                    166 S. W. 2d 884

Opinion delivered November 23, 1942.

R. W. Tucker, for appellant.

J. J. McCaleb, for appellee.

GRIFFIN SMITH, C. J. The suit as originally designed was to compel W. H. Powell to specifically perform a written contract, and to procure judgment on miscellaneous obligations of Cash and Carry Milling Company Powell is alleged to have agreed to pay. J. E. Whisnant was a joint plaintiff with Shaw, but later filed a stipulation releasing Powell.

Shaw was owner of two lots in Batesville upon which a feed mill was constructed and sold to Powell. The land and buildings were mortgaged to Batesville Federal Savings and Loan Association. Shaw's residence was included in the security. Copy of a writing dated January 10, 1941, recites sale of the land, ". . . more particularly described on a warranty deed attached to [a copy of the contract."] As part consideration moving to Shaw for sale of the real property and milling business, inclusive of machinery, etc., Powell agreed to pay the mortgage in monthly installments of $40, beginning with December, 1940. The balance was $2,318.81. Other recited indebtedness was: (a) Two notes held by Bell Lumber Company, one for $325, the other for $150, with stipulated interest. (b) Note to C. W. Pitts & Son for $385. (c) "A balance due on insurance [premium] on the property sold, $46.05." The contract states that deed to the real property would be deposited with loan papers held by Federal Savings, ". . . with the stipulation that said deed is to be delivered to [Powell] only when the loan to said association is fully paid, and also [when] the other notes enumerated [in the contract have been] paid in like manner."

July 7, 1941, Whisnant filed a statement that all amounts claimed from Powell had been "fully paid and discharged." There was a request that his suit be dismissed.

September 4, 1941, Powell moved for dismissal of Shaw's complaint insofar as it related to demand that the mortgage on Shaw's home be discharged at once. Receipts showing payment of all other items assumed in the written contract were exhibited to the court.

R. W. Tucker, who filed the complaint for Shaw and Whisnant, asked for summary judgment against Powell and Whisnant because Powell, according to Whisnant's declaration, had settled with Whisnant without consulting Whisnant's attorney, and without the attorney's knowledge.

Early in September, 1941, Shaw petitioned for appointment of a receiver on the ground that Powell was diverting assets, or was attempting to divert them. There was no allegation of insolvency. It does not appear that the court acted on the motion.

In the meantime (June, 1941) Fulton Bag & Cotton Mills, Inc., intervened, alleging that Shaw and Whisnant owed it $70.75, and that the sale of Cash and Carry Milling Company to Powell was consummated in disregard of the Bulk Sales Law. Pope's Digest, § 6067. Judgment against Shaw and Whisnant was asked. There was also a petition that Powell be made receiver as to property of the milling company coming into his hands, and that judgment be rendered against Powell.

September 15, 1941, Powell filed answer and cross complaint. It was alleged that in addition to the debts Powell assumed, as evidenced by the written contract, six items aggregating $545.19 were paid by him, although they were primary obligations of Shaw and Whisnant. Six other claims, aggregating $314.30, were outstanding. Total of the twelve items was $859.49. In their complaint Shaw and Whisnant listed twelve accounts amounting to $814.99 they alleged Powell assumed. It was also stated

that Shaw had been compelled to pay two of the twelve bills, one for $45, the other for $51.50.

It is admitted Shaw and Whisnant were partners. Whisnant rendered services in converting buildings into a milling status, and seemingly thereafter operated the business without interference from Shaw. Whisnant alleged in his complaint that Powell took over the unlisted debts of $814.99, and agreed to pay him $250. Powell testified he did not owe Whisnant anything and did not make a payment to him. Whisnant did not testify.

There is ample evidence in the bill of exceptions, which is incompletely abstracted, to show that Shaw was imposed upon by Whisnant.

Shaw's explanation of transactions preliminary to the contract with Powell was that he had information Powell was interested in buying the property. He (Shaw) prepared a list of "expenses" he had been out. He then went to Powell and told him that if reimbursed for this outlay, and if Powell would assume all obligations, the deal could be closed. Whisnant was not present. Shaw insists that when he went into Powell's office, Powell had a list of obligations he (Shaw) had prepared for Whisnant. The list, amounting to $1,172.59, was on Powell's desk. "I told Powell what I had told Whisnant: that if he (Powell) wanted to pay $1,172.59 in cash . . . and assume all the obligations, I would turn over my interest."

In consequence of this conversation, says Shaw, Powell later delivered his check for $1,000 and was given thirty days within which to pay the remainder. Shaw also testified that Powell told him he had three thousand bales of cotton, but did not want to sell it at once. It was Powell's opinion the commodities would advance; that he could sell to better advantage in thirty days, and he preferred to then pay the balance of $172.59. Powell is quoted as having said: "If anything happens [to prevent the sale] I will put up my real estate to take care of [your] real estate loan, clear it, and take care of all other indebtedness. . . . The following day he called me

and said, 'Let's go [to the Federal Savings office] and see if we can arrange a temporary agreement whereby I can pay you the thousand dollars and let the mortgage stand for thirty days on your land, and then I will take it up'."

The only evidence abstracted by appellant is an abridgment of what Shaw and Powell testified to; also a brief summation of the testimony of C. D. Metcalf, secretary-treasurer of the savings and loan association. The sale agreement between Shaw and Powell was drawn by Metcalf. In the abstract of Metcalf's testimony there is the statement that ". . . He (Metcalf) understood it was the expectation of Shaw and Powell that the mortgage would be paid in thirty days." Reference to the transcript, however, does not justify the conclusion. Metcalf was asked on direct examination if he knew what the intent was "relative to taking up this mortgage or deed of trust." He replied: "The understanding is covered by the printed or signed agreement." He was then questioned about his "understanding" of the arrangement, to which there was the response: "I wrote [the contract] and I think I understood it as it was written." He then stated that Powell had "taken care" of the payments; that he assumed them, and was meeting the obligation. Shaw, he said, was not relieved of liability. The question was asked, "Didn't you have an understanding that you would do that?" The answer was "No, sir." Metcalf then testified that Shaw and Powell may have had a private understanding between themselves, "but they didn't say anything to me about it." On cross examination Metcalf testified he thought it was the "expectation" of Shaw and Powell that the mortgage would be paid or transferred to other property, "but there was no agreement to that effect."

Shaw's complaint was dismissed for want of equity. On the cross action Powell secured judgment for $736. Tucker, as attorney for Whisnant, was allowed a fee of $50 because of the unauthorized settlement between Powell and Whisnant. In the decree of December 2, 1941, Powell was granted an appeal from the $50 judgment.

Shaw's appeal was granted by this court May 23, 1942. Pope's Digest, § 2741. Appellee's direct appeal was not perfected; nor did he cross appeal. He does not urge that allowance of the Tucker fee was improper.

Appellee's motion to dismiss for want of sufficient abstract (Rule Nine) could be sustained. However, we have preferred to examine the record to determine whether the decree is supported by a preponderance of the evidence—and it is.

Affirmed.